U.S. DISTR...
FILED
SEP 2 8 2007
U.S. DISTRICT COURT
WHEELING, WV 26003

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

BRENDA GAYVONT, on behalf of herself
and all others similarly situated,

Plaintiffs,

Civil Action No. 5:07-CV-125
(Marshall County Civil Action No. 07-C-206)

vs.

DAVOL INC. and C.R. BARD, INC.,

Defendants.

---

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S**
**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant C.R. Bard, Inc. ("Bard") and Defendant Davol Inc. ("Davol"), with full reservation of any and all defenses, objections, and exceptions, including but not limited to objections to service, venue, and statute of limitations, hereby remove the above-captioned action from the Circuit Court in and for Marshall County, West Virginia, to this Court. In support of removal, Defendants state as follows:

**Introduction**

1. Plaintiff initiated this purported class action with her "Class Action Complaint" (hereinafter "Complaint") filed before the Circuit Court in and for Marshall County, West Virginia. Plaintiff alleges that during a recent hernia repair surgery she received a Composix® Kugel® Hernia Patch ("Patch"), an FDA-approved medical device manufactured and sold by Davol for use in the repair of soft tissue defects, including hernias. (*See* Compl. ¶ 27.) Plaintiff further alleges that the Patch she received – or, perhaps, others similar to it – were voluntarily

recalled by Defendants at various times between December 2005 and January 2007 (*see id.* ¶¶ 13-18), and, by virtue of this fact, Plaintiff claims that all Patches "are uniformly defective because they possess the same *potential*" to cause injury. (*Id.* ¶ 22 (emphasis added).) Plaintiff has suffered no physical injury (*see id.* ¶ 31), but instead seeks medical monitoring on behalf of herself and a class of similarly uninjured, West Virginia residents "who have had a recalled Composix® Kugel® Mesh Patch implanted into their person[s]." (*Id.* ¶ 31.) Specifically, Plaintiff requests that the Court "establish[] a medical monitoring program, funded by Defendants, to provide medical testing, screening, services, research and education and a medical/legal registry to ensure that the Class members receive prompt and proper medical treatment." (*Id.* 15, "Prayer for Relief;" *see also id.* ¶ 1 (alleging that Plaintiff and the class members "will need continual and ongoing medical monitoring"). Plaintiff also seeks attorneys' fees, costs, and prejudgment interest. (*Id.* 15, "Prayer for Relief.")

2. Although slightly different in form, Plaintiff's Complaint is no different in substance from the numerous other product liability actions brought by patients who received the Composix® Kugel® Hernia Patch and now claim to have suffered – or fear they might ultimately suffer – some physical injury. In 2006, in fact, two plaintiffs who also claimed to have suffered no injury and who sought medical monitoring, and who were represented by the same plaintiffs' counsel that filed this lawsuit, filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") seeking transfer and centralization of all federal cases involving this medical device pursuant to 28 U.S.C. § 1407. On May 31, 2007, the JPML heard that motion, and on June 22, 2007, the JPML granted the plaintiffs' motion for transfer and consolidation. (*See* JPML Transfer Order, June 22, 2007 (Ex. A).) As a result, all federal cases concerning the Composix® Kugel® Patch have been transferred or are in the process of being transferred to the District of

Rhode Island for consolidated pretrial proceedings. Among those cases are six proposed class actions seeking, *inter alia*, medical monitoring, four of which were filed in federal court on behalf of all of the residents of a particular state who received a Composix® Kugel® Patch, and invoked CAFA as the basis for their jurisdiction.[1] With Defendants' removal, the present action can and should become part of those MDL proceedings in due course.

## I. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

3. This Notice of Removal is properly directed to this Court pursuant to 28 U.S.C. § 1446(a), as it is the District Court embracing the Circuit Court in and for Marshall County, West Virginia, where Plaintiff's Complaint is pending. *See* 28 U.S.C. § 129(a).

4. This Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is being filed within 30 days after the first receipt by Defendants, through service, of Plaintiff's Complaint, which sets forth the bases for removal.[2]

5. As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendants (including Plaintiff's Complaint) is attached hereto as Exhibit C (certified copy of Circuit Court's file and certified copy of Circuit Court's docket sheet).

6. Pursuant to 28 U.S.C. § 1446(d), Defendants are filing a copy of this Notice of Removal with the clerk of the Circuit Court in and for Marshall County, West Virginia, where Plaintiff's Complaint is pending. In addition, copies of this Notice of Removal and the written notice of same provided to the state court are also being served upon Plaintiff's counsel in accordance with 28 U.S.C. § 1446(d).

---

[1] One of these cases were brought by the same counsel who bring this action. *See* Compl., *Boggs v. Davol Inc.*, No. 07CV00642 (S.D. Ill.) (Ex. B), a class action prosecuted on behalf of all *Illinois* residents who received the Composix® Kugel® Hernia Patch.

[2] Defendants were served in this action via service of process on the Secretary of State, effected on August 30, 2007. (*See* Ex. C.)

## II. THIS COURT HAS DIVERSITY JURISDICTION OVER THIS PURPORTED CLASS ACTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

7. As will be shown more fully below, this Court has original jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d) because (1) the class includes at least 100 members; (2) the aggregate amount in controversy, exclusive of interest and costs, exceeds the sum of $5,000,000; and (3) there is complete diversity of citizenship between Plaintiff and Bard and Davol. *See* 28 U.S.C. § 1332(d)(2), (5), (6). Thus, this action may be removed to this Court pursuant to the Class Action Fairness Act ("CAFA") as embodied in 28 U.S.C. §§ 1441 and 1453.

### A. The Numerosity Requirement Is Satisfied

8. CAFA governs class actions where the number of potential class members is more than 100. *See* 28 U.S.C. § 1332(d)(5)(B) (excluding from CAFA's purview actions in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100"). Here, Plaintiff alleges that the proposed class consists of "approximately 600 people in the State of West Virginia [who] had these [allegedly] defective devices implanted in their bodies." (Compl. ¶ 6.) Accordingly, CAFA's numerosity requirement is satisfied.

### B. The Amount-In-Controversy Requirement Is Satisfied

9. Although Defendants deny Plaintiff's claims, and although Plaintiff avers that the amount-in-controversy requirement is not met in this case (*see* Compl. ¶ 5), Defendants believe in good faith that the $5,000,000 amount-in-controversy requirement of 28 U.S.C. § 1332(d)(2) has been met given the relief sought by Plaintiff. CAFA expressly requires that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C.

§ 1332(d)(6). Plaintiff's proposed class of approximately 600 persons who allegedly require permanent medical monitoring presents a facially apparent claim for relief that "exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2); *see Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (holding that jurisdiction is proper where the allegations set out in plaintiff's complaint make it "facially apparent that the claims are likely above" the requisite amount-in-controversy).

10. Plaintiff seeks on behalf of all class members "continual and ongoing medical monitoring" (Compl. ¶ 1) that includes, but is not limited to, CT Scans. (*Id.* ¶ 60.) CAFA's $5 million threshold is easily surpassed by any regime of CT scans likely to be proposed by Plaintiff, without even considering any other aspects of "continual and ongoing medical monitoring." A review of the "Charge Master" data filed with the West Virginia Health Care Authority reveals that the average, per-patient charge for an abdominal CT scan (with and without contrast) among a sample of geographically diverse hospitals is $1,418.57.[3] And, according to the Medicare website (http://www.cms.hhs.gov/pfslookup/), Medicare reimburses physicians $62.50 for their review and interpretation of CT scans. After combining the above-stated average cost of a CT scan for a West Virginia patient ($1,418.57) with the Medicare-based physician's charge for review of a CT scan ($62.50), and assuming an average life expectancy

---

[3] The West Virginia Healthcare Authority website provided information on the cost of CT scans at the following hospitals: (1) Wetzel County Hospital located in New Martinsville, West Virginia; (2) Wheeling Hospital located in Wheeling, West Virginia; (3) Boone Memorial Hospital located in Madison, West Virginia; (4) Jefferson Memorial Hospital located in Ranson, West Virginia; (5) Bluefield Regional Medical Center located in Bluefield, West Virginia; (6) Cabell Huntington Hospital located in Huntington, West Virginia; (7) Logan Regional Medical Center located in Logan, West Virginia; (8) West Virginia University Hospital located in Morgantown, West Virginia; (9) Fairmont General Hospital located in Fairmont, West Virginia; (10) Weirton Medical Center located in Weirton, West Virginia; (11) CAMC-Teays Valley Hospital located in Hurricane, West Virginia; and (12) Williamson Memorial Hospital located in Williamson, West Virginia. *See* http:/www.heawv.org/fnYoda2/. Review of this information showed that the cost of an abdominal CT scan for a West Virginia patient ranges from $945.25 to $2,453.24. *See* Ex. D (containing printouts from the Health Care Authority website for medical procedure code 74170).

among the proposed class of only 20 years, it is apparent that the potential cost of providing an annual abdominal CT scan as a part of Plaintiff's 600-plaintiff "continual and ongoing medical monitoring" program *alone* exceeds $17,772,840.00.

11. In addition to the CT scans expressly sought by Plaintiff, Plaintiff requests that the Defendants fund some unspecified type and amount of "research." (*See* Compl., "Prayer for Relief.") The costs associated with the development and maintenance of the research program must be considered when evaluating the amount in controversy. *See Katz v. Warner-Lambert Co.*, 9 F. Supp.2d 363, 364-65 (S.D.N.Y.1998) (noting that when a plaintiff class brings a claim for medical monitoring and creation of research fund, the amount in controversy is measured by the cost to the defendant of creating the monitoring program and/or the research fund). Medical research is notoriously expensive, and even without further explanation from plaintiffs as to what "research" they seek, it is obvious that this would be a significant additional expense should they be awarded the relief sought.

12. Plaintiff also seeks the establishment of an "education" program and a "medical/legal registry." (*See* Compl., "Prayer for Relief.") Like the research program noted above, the cost of developing, implementing, and maintaining any educational program or medical/legal registry must be considered in determining the true amount in controversy in this action.

13. Finally, Plaintiff's Complaint seeks attorneys' fees (*see* Compl. 15, "Prayer for Relief"), which are properly included in the amount-in-controversy calculation. *See, e.g., Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 545 (5th Cir. 2006) ("[W]e are satisfied the petition, seeking damages for severe injuries suffered by at least 500 people and attorneys' fees, makes it 'facially apparent' that at least $5 million is in controversy, in the aggregate."). In a complex case such as this, Plaintiff's attorneys will likely be awarded at least 25% of any fund established

to support Plaintiff's sought-after medical monitoring relief. *See* MCL 4th § 14.121 ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund. Several courts have established benchmarks, either a specific figure or a range, subject to upward or downward adjustment depending upon the circumstances of the case. Awarding attorneys 25% of a common fund represents a typical benchmark." (citations omitted)). Thus, after taking into account the amount of attorneys' fees likely to be awarded in a case of this nature, the "sum or value" of the relief sought by Plaintiff other than attorneys' fees need only exceed $3.75 million to meet CAFA's amount-in-controversy requirement.

14. Beyond the allegations set out in Plaintiff's Complaint, the "sum or value" of the matter in controversy in this action may also be determined with reference to similar actions. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295-96 (S.D.N.Y. 2001) (looking to other suits involving the same product to resolve amount-in-controversy inquiry). Such a comparison is particularly enlightening here, where counsel for Plaintiff has previously filed a similar, state-wide medical monitoring class action in federal court, expressly invoking federal diversity jurisdiction under CAFA. *See* Compl., *Boggs v. Davol Inc.*, No. 07CV00642 (S.D. Ill.), ¶ 5 (Ex. C) ("This Court has diversity jurisdiction over the Class pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005. Plaintiff and each member of the putative Class have suffered aggregate damages exceeding five million dollars ($5,000,000), exclusive of interest and costs."). Likewise, some *individual* plaintiffs have filed medical monitoring complaints before various federal courts, thus indicating that their *individual* claims exceed $75,000, the amount typically required to invoke federal jurisdiction. *See, e.g.*, Compl., *McCormick v. Davol Inc.*, No. 07CV02903 (S.D. Tex.), ¶ 4 (Ex. E) ("[T]he amount in controversy exceeds $75,000.00, exclusive of interest and costs.").

15. Finally, the allegations in Plaintiff's Complaint do not preclude recovery in excess of CAFA's statutory threshold. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. at 296 (finding amount-in-controversy threshold met where "the complaint . . . d[id] not preclude recovery" in excess of the statutory amount). To the contrary, it is facially apparent that the sum or value of the relief sought by Plaintiff far exceeds CAFA's requisite amount-in-controversy.

**C. The Parties To This Proposed Class Action Are Minimally Diverse**

16. CAFA applies to all proposed class actions where the parties are "minimally diverse," meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The minimal-diversity requirement is met here. In fact, the parties are completely diverse.

17. Plaintiff is a citizen of West Virginia (*see* Comp. ¶ 2), who proposes to represent a class of persons who are also citizens of West Virginia. (*See id.* ¶ 31.)

18. Bard is and has been at all relevant times, a corporation organized under the laws of the State of New Jersey with its principal place of business also in New Jersey. Accordingly, Bard is not a citizen of West Virginia. *See* 28 U.S.C. § 1332(c)(1).

19. Davol is, and has been at all relevant times, a corporation organized under the laws of the State of Delaware with its principal place of business in Rhode Island. Accordingly, Davol is not a citizen of West Virginia. *See* 28 U.S.C. § 1332(c)(1).

WHEREFORE, Defendant C.R. Bard, Inc. and Defendant Davol Inc. respectfully remove this action from the Circuit Court in and for Marshall County, West Virginia, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

C.R. Bard, Inc. and Davol Inc., Defendants

By Counsel

LARRY W. BLALOCK (#366)
JACKSON KELLY PLLC
1144 Market St.
Wheeling, West Virginia 26003
304/ 233 4000
304/233-4077

and

JOE G. HOLLINGSWORTH
KIRBY T. GRIFFIS
MICHAEL L. JUNK
SPRIGGS & HOLLINGSWORTH
1350 I Street NW
Washington, DC 20005
202/ 898-5800
202/ 682-1639
***Counsel for Defendants***

# CERTIFICATE OF SERVICE

Service of the foregoing Notice of Removal was had this 18th day of September, 2007 by mailing a true and complete copy thereof as follows:

Teresa C. Toriseva, Esq.
Nancy C. Wilkins, Esq.
WEXLER TORISEVA WALLACE LLP
1446 National Rd.
Wheeling, WV 26003

Fred Thompson, III, Esq.
Rhett D. Klok, Esq.
Fred Thompson, Esq.
Henry Leventis, Esq.
Carmen Scott, Esq.
MOTLEY RICE LLC
28 Bridgeside Blvd.
PO Box 1792
Mt. Pleasant, SC 29465

Edward A. Wallace, Esq.
Mark R. Miller, Esq.
WEXLER TORISEVA WALLACE LLP
55 Monroe St., Suite 3300
Chicago, IL 60603

Donald A. Migliori, Esq.
MOTLEY RICE LLC
321 South Main St.
PO Box 6067
Providence, RI 02940

David R. Ealy, Clerk
Marshall County Circuit Court
Marshall County Courthouse
600 Seventh Street
Moundsville, WV 26041

By Counsel

LARRY W. BLALOCK (#366)
JACKSON KELLY PLLC
1144 Market Street
Wheeling, West Virginia 26003
304/ 233 4000
304/233-4077