**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO: Gayvont, No. 1:07-cv-01966-ML-LDA** | § | **Chief Judge Mary M. Lisi** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

According to the putative class action complaint she filed in West Virginia state court, plaintiff Brenda Gayvont ("Gayvont") seeks to represent a class of "approximately 600" members requesting medical monitoring and other relief. *See* Class Action Complaint and Jury Demand ("Complaint") at ¶¶5-7 (Ex. B to Docket #2).[1] Defendants C.R. Bard, Inc. and Davol Inc. (collectively "Bard") removed the Complaint, relying on Gayvont's pleading of the size of the putative class, and providing evidence establishing that the amount in controversy exceeded $5,000,000 as required by the Class Action Fairness Act ("CAFA"). *See* Defendant Davol Inc.'s and Defendant C.R. Bard, Inc.'s Notice of Removal at 3-8 ("Not. of Removal") (Docket #3).

In opposing removal, Gayvont appears to accept Bard's estimates of the cost of her requested relief, but seeks to undermine Bard's calculation of the amount in controversy by disparaging the reliability of her own allegation of the size of the putative class. *See* Plaintiff's Memorandum of Law in Support of Motion To Remand at 1 ("Mem. for Remand") (Docket #2) (criticizing defendants for taking her "suppositions about the number of West Virginia class members as fact"); *id.* (admitting that she "does not have a good faith basis for alleging the number of class members").

[1] References to "Docket" entries refer to the Court's individual case file for *Gayvont*, No. 1:07-cv-01966-ML-LDA.

Gayvont's belated effort to avoid federal jurisdiction by retreating from her own allegations is not allowed by the law, which provides that the record at the time of removal – including facts pled by the plaintiff – controls whether federal jurisdiction exists. Here, at removal, the record contained Gayvont's specific allegation regarding the size of the class and her general allegation that the amount in controversy was not satisfied. The record also included Bard's Notice of Removal, which presented undisputed evidence showing that the $5,000,000 amount in controversy threshold would be satisfied if Gayvont recovered only one of the many types of damages sought in the Complaint. Therefore, the motion for remand should be denied.

**BACKGROUND**

Under CAFA and the federal removal statutes, a putative class action is removable to federal court if: (1) the putative class includes at least 100 members; (2) the aggregate amount in controversy, exclusive of interest and costs, exceeds $5,000,000; and (3) there is diversity of citizenship between Gayvont and the class, Bard, and Davol. Not. of Removal at 4; 28 U.S.C. §1332(d)(2), (5), (6). Each requirement is satisfied here.[2]

According to Gayvont's Complaint, "approximately 600 hundred people in the State of West Virginia had these defective devices implanted in their bodies." Complaint at ¶6. In contrast to this specific allegation regarding the size of the putative class, Gayvont generally alleged that:

> The medical monitoring program, while expensive, would have to exceed $8,333.33 for each member of the class to meet the jurisdictional threshold of the Class Action Fairness Act. Accordingly, it does not appear that this jurisdictional threshold will be exceeded at this time, and therefore, venue is proper in this Court as plaintiff resides in this district."

[2] The parties agree that the diversity requirement is satisfied.

Complaint at ¶7; *see also id*. at ¶5 (discussing amount in controversy and claiming jurisdictional threshold is not met). The Complaint does not contain any information supporting this allegation.

In its Notice of Removal, Bard relied on Gayvont's specific allegation regarding the size of the class. Not. of Removal at 4. However, Bard produced evidence disproving Gayvont's conclusory allegation that the amount in controversy requirement was not satisfied. Gayvont demanded medical monitoring for life for each putative class member "including but not limited to CT scans" to monitor for potential injuries allegedly resulting from use of Bard's products. Complaint at ¶60. As established by the Notice of Removal, the CT component alone would cost $29,621.40 per putative class member. Not. of Removal at 5-6. Assuming as it must at this stage of the litigation that Gayvont could prove the allegations regarding class size that she included in her Complaint, Bard demonstrated even if Gayvont prevailed only on this item of requested damages, the aggregate cost of the CT scans for the 600-member class equals well over $5 million.[3] *Id.*

Gayvont's remand request contains no evidence regarding the cost of CT scans, nor does she meaningfully challenge Bard's methodology or computation of the potential recovery value.[4] Instead, she claims that Bard has not shown the amount in controversy exceeds $5,000,000

---

[3] If Gayvont and the putative class are awarded all of the relief sought in the Complaint, such as requiring Bard to fund medical research, the amount in controversy is increased. As explained in the Notice of Removal, the additional relief sought would increase Gayvont's recovery by hundreds of thousands of dollars.

[4] According to Gayvont, the Notice of Removal contains premature speculation that she will request CT scans because she has not yet submitted expert testimony regarding the full medical monitoring plan she seeks. Mem. for Remand at 9 n.9. Again, Bard is entitled to rely on her demand in her complaint for CT scans. *See* Complaint at ¶60 ("Medical testing and monitoring procedures are currently available, including but not limited to CT Scans, to determine whether any problems have developed due to the implanted mesh patch."). Although Bard disputes any need for or entitlement to medical monitoring, to

because, without proving the exact number of putative class members, Bard cannot conduct any calculations.

## ARGUMENT

Gayvont seeks to avoid federal jurisdiction by disclaiming her specific allegation that the putative class has "approximately 600" members. *See* Mem. for Remand at 1 (criticizing Bard for taking her "suppositions about the number of West Virginia class members as fact"); *id.* (admitting that she "does not have a good faith basis for alleging the number of class members"); *id.* at 4 (indicating she "has no idea exactly how many implantations" occurred in West Virginia); *id.* at 5 ("assum[ing] that tens, if not hundreds, of the [patches] were surgically implanted in West Virginia residents," but burden to prove that is defendant's); *id.* at 9 (Gayvont "could not possibly know the size of the class"). Without citation, she argues that the general allegation in her Complaint that there is no basis for federal jurisdiction should control. *Id.* at 9-10. Gayvont's arguments contradict established case law, as well as the purposes of the removal statutes.

Specific jurisdictional allegations in the complaint control whether the case may be removed. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling" to determine if case is removable absent evidence to the contrary); *Lanier v. Norfolk So. Corp.*, No. 06-1986, 2007 WL 4270847, at *2 (4th Cir. Dec. 5, 2007) (explicit allegations in complaint regarding amount in controversy control jurisdiction assessment); *Muniz v. Pilot Travel Ctrs., LLC*, No. CIV. S-07-0325, 2007 WL 1302504, at *3-4 (E.D. Cal. May 1, 2007) (when evaluating removal under CAFA, court must assume plaintiff will prove allegations contained in complaint).

---

determine whether removal is proper the Court must rely on Gayvont's characterizations in her Complaint of the nature of the relief that she seeks.

Where a plaintiff makes specific jurisdictional allegations, a defendant may rely on them as a basis for removal and, at this early stage of the litigation, undisputed allegations should be accepted as true by the court in evaluating the propriety of removal. *Ching v. Mitre Corp.*, 921 F.2d 11, 13 (1st Cir. 1990) (federal court determines propriety of removal based on complaint at time of removal and court will read complaint literally where specific allegations are made); *Chavis v. Fidelity Warranty Servs.*, 415 F. Supp. 2d 620, 627 (D.S.C. 2006) (where plaintiff alleged in complaint that putative class included more than 100 people, defendant properly relied on that allegation as basis for removal); *Muniz*, 2007 WL 1302504, at *3 (when considering remand, court must accept plaintiff's specific allegations as true and assume that plaintiff will prove the specific fact alleged).[5] Courts have repeatedly found that where specific allegations are made, such as the class-size allegation made by Gayvont, relying on that allegation "follows the approach contemplated by the case law and, from a practical standpoint, is the only avenue available to [defendants] given the early stage of the litigation." *Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, 223 (D.N.H. 2004); *see also Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 938 (S.D. W. Va. 1996) ("The complaint defines the matter in controversy."); *see also Fusco v. Medeiros*, 965 F. Supp. 230, 236, 245 (D.R.I. 1996) (attorneys must determine that allegations have some evidentiary support before including them in a complaint).

Gayvont's Complaint specifically alleged that the putative class included approximately 600 members and Bard justifiably relied on that allegation when it filed its Notice of Removal. At that point, federal jurisdiction attached; Gayvont cannot avoid that jurisdiction by disavowing

[5] Although there is a dispute among courts who have considered CAFA-based removals regarding which party has the burden of proof and what standard must be satisfied, this Court need not resolve those conflicts. Even if it Bard's burden to show removal is proper as Gayvont alleges, Bard satisfied that requirement by properly relying on Gayvont's estimate of the putative class size and providing undisputed evidence regarding the cost of one (of many) types of damages Gayvont requested. Bard has shown that the amount in controversy is met.

her prior allegation. *See Moniz v. Bayer A.G.*, 447 F. Supp. 2d 31, 36 (D. Mass. 2006) (whether a case is removable is evaluated on basis of complaint at time of removal, not what may occur in future); *Chavis*, 415 F. Supp. 2d at 627 (same); *see also Ching*, 921 F.2d at 13-14 (jurisdiction not destroyed when after removal, plaintiff amends allegations so that jurisdiction would not have originally attached). Whether that assertion ultimately is proven is a matter for later consideration by a *federal* court. And it is not a close call: given the undisputed CT cost figures alone, and taking into account no other cost element, CAFA's jurisdictional amount would be satisfied by a putative class of only 169 members.

If this Court adopts Gayvont's position, the removal provisions of CAFA will be frustrated. Congress intended that section 1332(d) "expand substantially federal court jurisdiction over class actions ... [and] its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Chavis*, 415 F. Supp. 2d at 627 (citing S. Rep. No. 109-14 at 42, 2005 U.S.C.C.A.N. 3, 40); *see also Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007) (CAFA enacted to curtail "certain abusive practices by plaintiffs' class counsel" by "broadening federal diversity jurisdiction over class actions with interstate implications"); *Hart v. FedEx Ground Pkg. Sys., Inc.*, 457 F.3d 675, 681 (7th Cir. 2006) (affirming denial of motion to remand because removal provisions of CAFA should be "read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed") (internal quotations omitted). Therefore, any doubts regarding whether the amount in controversy is met should be resolved in favor of removal. *Chavis*, 415 F. Supp. 2d at 627 n.6. Plaintiffs are masters of their complaints and can specifically plead allegations that will prevent

removal if they desire. Gayvont cannot abandon these specific allegations because she does not like their result.

Further, under Gayvont's scheme, any defendant seeking to remove a class action would be required to prove the number of members of the putative class at the time it removes the case regardless of whether the plaintiff has alleged the approximate class size. Not only would such a requirement be completely impractical at this early stage of the litigation, but it also would require a defendant to assume part of the plaintiff's burden of establishing a crucial element of her case – the existence and identity of a sufficiently numerous putative class. Gayvont does not cite – and there is no – provision for such a burden shift in the federal law governing removals or class actions.

## CONCLUSION

For all of the above reasons, Gayvont's request for remand should be denied.

Respectfully submitted,

January 15, 2008

s/ Kirby T. Griffis
Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., Ninth Floor
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

*Attorneys for Defendants*
*C.R. Bard, Inc. and Davol, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2008, the foregoing OPPOSITION TO PLAINTIFF'S MOTION TO REMAND was electronically filed with the Clerk of Court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via facsimile and electronic mail*

s/ Kirby T. Griffis
Kirby T. Griffis